```
 1          IN THE UNITED STATES DISTRICT COURT

 2     FOR THE DISTRICT OF MARYLAND/NORTHERN DIVISION

 3     UNITED STATES OF AMERICA

 4                                      CRIMINAL NO.

 5      vs.                            GLR 13-080

 6     YVONNE TAYLOR,                  June 21, 2013

 7               Defendant

 8     _____/

 9

10                  TRANSCRIPT OF SENTENCING

11          BEFORE THE HONORABLE GEORGE LEVI RUSSELL, III,

12               UNITED STATES DISTRICT JUDGE

13     APPEARANCES:

14     On behalf of the United States:

15     Evan L. Shea, AUSA
16     Michael P. Cunningham, AUSA

17

18     On behalf of the Defendant:

19     Joshua R. Treem, Esquire
       Emily L. Levenson, Esquire
20     Lance Hamm, Esquire

21

22

23     Reported By:

24     Jacqueline Sovich, RPR, CMR, FOCRR

25     Official Court Reporter.
```

```
 1                    (PROCEEDINGS)
 2            THE COURT:  Have a seat.  Mr. Cunningham, would you
 3    like to call the case for me, please?
 4            MR. CUNNINGHAM:  Calling the case of United States
 5    versus Yvonne Taylor, Criminal Docket Number GLR 13-0080.
 6    Michael Cunningham for the United States.  With me at counsel
 7    table is Special Agent Mary Horn.  The matter's in for a
 8    sentencing proceeding this morning.
 9            MR. TREEM:  Good morning.  Joshua Treem representing
10    Miss Taylor, who is seated to my left, along with Emily
11    Levenson and Lance Hamm.
12            MR. HAMM:  Good morning.
13            MS. LEVENSON:  Good morning.
14            MR. TREEM:  We're prepared to proceed.
15            THE COURT:  Okay.  Mr. Treem, Ms. Levenson, Mr. Hamm,
16    always a pleasure in this case.
17            All right.  Counsel, we are ready to proceed with a
18    sentencing in this case on February 25th, 2013.  The defendant
19    appeared in court for an arraignment, at the conclusion of the
20    proceedings was found guilty of Count 1 of the information.
21            Upon the finding of guilt, the Court ordered that a
22    presentence report be prepared, and the sentencing is set for
23    today in this matter.
24            We are ready to proceed.  Let me ask Miss Taylor,
25    have you and your attorneys been able to carefully review and
```

1    discuss the presentence report in this case?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  And approximately how long or how many

4    times have you reviewed the presentence report?

5              THE DEFENDANT:  Maybe about five times.

6              THE COURT:  And do you have any questions at all or

7    concerns at all about the presentence report that your counsel

8    has not addressed with me?

9              THE DEFENDANT:  No, sir.

10             THE COURT:  Okay.  Now, I know that there were a

11   number of requests that were indicated in the presentence

12   report, requests for changes in the presentence report in this

13   matter.

14             However, the guidelines calculation, I believe

15   there's no dispute about.  There is a base guideline offense

16   level of 14, adjustment for acceptance of responsibility

17   reduces that to 12.  Because of the lack of criminal history of

18   Miss Taylor, it is Category I, which would leave her range,

19   guideline range, of 10 to 16 months, with a maximum term of

20   supervised release of three years and a maximum term of

21   probation of five years, and a fine of $250,000 with a

22   guideline range of between 3,000 and 30,000.

23             Mr. Treem, have I accurately summarized the guideline

24   calculations in this case?

25             MR. TREEM:  Yes, Your Honor.

1          THE COURT:  Now, do you understand that there is a

2    request for probation in this matter.  The government is

3    seeking five years, imposition of five years of probation.  And

4    of course, Mr. Treem, you're seeking imposition of three years

5    probation with an expansion of Miss Taylor's ability to travel

6    in the Washington, D.C., Maryland and Virginia metropolitan

7    region.

8          Is that correct?

9          MR. TREEM:  That's correct, Your Honor, yes.

10         THE COURT:  Okay.  Very good.  I will also

11   acknowledge that I have received and reviewed several letters,

12   one from Miss Taylor herself, as well as from a Miss Ione

13   Evans, a Patricia Holder, and a Miss Andrea King Chang.

14         MR. TREEM:  Your Honor, just for the record, they are

15   present in the courtroom, and if the Court has any questions

16   you may wish to address to them, they are certainly prepared to

17   respond.

18         THE COURT:  Okay.  Very good.  I least wanted to be

19   sure I went on the record to let you know I did receive their

20   letters, and I read them over very carefully yesterday in this

21   case.

22         Now, there were some representations regarding the

23   factual accuracy of the presentence report that were noted by

24   Mr. Treem in this case.  The first I will address in order,

25   custodial status.  It was an indication that Miss Taylor's

1    initial appearance in the District of Maryland on June 10 of

2    2011.  She was placed under the supervision of Pretrial

3    Services Officer Marcus Crenshaw.

4              Is there any objection to the response to 1 A, Mr.

5    Treem?

6              MR. TREEM:  No, Your Honor.

7              THE COURT:  All right.  Very well.  The response with

8    the correction will be accepted.

9              Is there any objection to the response to paragraph

10   -- which you were requesting paragraph 27, other --

11             MR. TREEM:  Excuse me, Your Honor.  Perhaps I

12   misspoke.

13             We don't have any objection to the custodial status

14   issue.  But with respect -- there is a notation on page 1 A

15   about -- the objection about probation being an option.

16             THE COURT:  Right.

17             MR. TREEM:  And we do object to the extent that the

18   presentence report says probation is not an option.  It is a

19   statutorily mandated option for the Court.  It may not be an

20   option under the advisory guidelines.

21             THE COURT:  Right.

22             MR. TREEM:  But it is an option by statute.

23             THE COURT:  Understood.  In other words, it's not an

24   option, you do agree that it's not an option under the advisory

25   guideline scheme as agreed to by the parties, but both sides

1    are seeking that this Court vary in its sentence from the

2    guidelines to allow for the imposition of a probationary

3    sentence.

4            MR. TREEM:  That's correct, Your Honor.

5            THE COURT:  Perfect.

6            I will ask that the report just be corrected to

7    reflect that there is no dispute that probation is not an

8    option under the advisory guidelines, but there is a

9    possibility of a probationary sentence by statute.

10            Do you agree paragraph 42 there's no need to change,

11   in paragraph 47, there's no need to change.

12            MR. TREEM:  Correct, Your Honor.

13            THE COURT:  Correct.  And you do agree that the

14   paragraph has been amended, paragraph 53 has been amended to

15   correct the typographical error.

16            Is that right?

17            MR. TREEM:  Yes, sir.

18            THE COURT:  And then finally, you do agree that the

19   information requested in paragraph 56 has been added?

20            MR. TREEM:  Yes, Your Honor.

21            THE COURT:  All right.  Very well.  So we have

22   resolved the factual disputes as well as the legal disputes in

23   this case.

24            Is that correct, Mr. Treem?

25            MR. TREEM:  Yes, Your Honor.

1           THE COURT:  All right.  As I indicated, the defense

2     is not seeking a departure, but the defense is simply seeking a

3     variance.

4           Is that correct, Mr. Treem?

5           MR. TREEM:  Yes, Your Honor.  Well, yes, I guess

6     that's the end result of we're asking for, yeah, a variance

7     below the guidelines and a sentence of probation, yes, sir.

8           THE COURT:  Understood.  So as a result, I am not

9     going to -- the defense is not seeking a departure, the defense

10    is going to be seeking a variance.

11          MR. TREEM:  That's correct, Your Honor.

12          THE COURT:  All right.  Noted.

13          There's no need at this point in time to -- or is

14    there a need pursuant to the regular course of business to seal

15    this portion of the proceeding?

16          MR. CUNNINGHAM:  The government does not believe so,

17    Your Honor.

18          THE COURT:  All right.  Noted.

19          Now, let me ask, I'll now call upon the government to

20    make a statement if you'd like, Mr. Cunningham.

21          MR. CUNNINGHAM:  Your Honor, I think I can be very

22    brief.  Hopefully, Mr. Shea's sentencing memorandum responded

23    to any questions the Court would have, and that is the position

24    the government takes as has been articulated already this

25    morning with regard to the position on probation as well as the

1    previous discussion of it at the time of the plea, that the

2    plea was entered.

3           There is one additional thing that I would ask the

4    Court to make a record of, you had signed a preliminary, or an

5    order of forfeiture before, which I would ask you to

6    incorporate orally in your sentence that you impose in this

7    case.

8           THE COURT:  There's no objection to that, Mr. Treem,

9    is there?

10          MR. TREEM:  Not at all, Your Honor.

11          THE COURT:  All right.  The order of forfeiture of

12   the monies that were seized from Miss Taylor will be

13   incorporated into whatever sentence that I impose.

14          MR. CUNNINGHAM:  Your Honor, unless you have any

15   specific questions, you want me to respond to regarding the

16   government's sentencing memorandum, we'll submit on that.

17          THE COURT:  I don't.  I don't.  Thank you.

18          MR. CUNNINGHAM:  Thank you, Your Honor.

19          THE COURT:  Mr. Treem, I'll hear from you.

20          MR. TREEM:  Thank you, Your Honor.  Well, under the

21   principle, Your Honor, of not wanting to say too much and its

22   corollary of knowing when to stop --

23          THE COURT:  Why don't I impose of period of probation

24   of five years.  I mean, you're asking for three years.

25          MR. TREEM:  Right.  Well, the first question -- do I

1    have to convince you about the probation?  If the answer's no,

2    I'll go to three versus five.

3              THE COURT:  Why don't you talk to me about the

4    probation?

5              MR. TREEM:  Okay.  Fair enough, Your Honor.  Okay.

6              Okay.

7              THE COURT:  Because the recommendation of the

8    five-month split by pretrial is not out of the realm of

9    reasonableness, either.

10             MR. TREEM:  That's certainly fair, Your Honor, and I

11   have some responses to that.  So let me start.

12             So why is probation the appropriate sentence here?

13             It's appropriate because of who Miss Taylor is.  This

14   is a 55-year old working woman, a single mom, who raised three

15   children virtually on her own, who's had two marriages, the

16   most recent one an abusive marriage that she has put behind

17   herself.

18             This is a woman who emigrated from Jamaica at the age

19   of 24, studied to become a nurse, became a nurse, practiced as

20   a nurse for a number of years, became a United States citizen,

21   fulfilling all the requirements that Your Honor requires.

22             She has, as the presentence report reflects, owned

23   her own home, which she has managed to do by herself,

24   essentially.

25             She has worked continuously in her chosen profession,

1    which the letters that have been sent to you clearly reflect is

2    her passion.

3            She has done that even during the term of these

4    proceedings, which stretch out slightly over two years, since

5    the incident.

6            And all of this, Your Honor, kind of reflects her

7    spirit and her determination, her responsibility.  She has not

8    let these events, here today and her own mistakes that she has

9    made, beat her down.

10           She will tell you in her allocution, that she has

11   continued with her life attempting to continue as a nurse,

12   continue her education toward getting a college degree,

13   continue with her licensing and continue with her practice.

14           She has a job opportunity in the District of Columbia

15   she will tell you about.

16           And the point of all this is that Miss Taylor's

17   looking to the future, that these events, as consequential as

18   they may well turn out to be in terms of her profession, have

19   not beaten her up.  And I think that spirit speaks a lots about

20   who she is and what she is about and why probation as opposed

21   to jail is an appropriate sentence in this case.

22           THE COURT:  Why did she -- maybe she can address it,

23   address this, but one of the questions I have is why did she

24   travel with a hundred, over a hundred thousand dollars of bulk

25   cash?  How can the Court be assured that she has been

1    adequately deterred from engaging in that behavior again?

2              MR. TREEM:  Well, okay.  Well, I'll jump ahead.  I am

3    going to get to that.

4              THE COURT:  Okay.  Okay.  All right.

5              MR. TREEM:  That's at the tail end of this.

6              THE COURT:  All right.

7              MR. TREEM:  So this is I think a woman who comes to

8    court, as is recognized by everybody, with not only a clean

9    record, but with the government's recommendation of probation,

10   which I think has to weigh very heavily on the Court.

11             Because it is especially with this kind of offense,

12   which is an omission of a duty to file a form created by the

13   government for government purposes in some I guess theoretical

14   -- well, not even theoretical, in all respects, the government

15   is the victim here.  There is no other victim.  It's the

16   government that wanted the information that wasn't provided,

17   and the government has decided that for this Class D felony, in

18   these circumstances, knowing who Miss Taylor is, and they

19   certainly know all about her, she does not warrant, and her

20   conduct does not warrant a term of imprisonment.

21             THE COURT:  I'll give that heavy weight and

22   consideration.

23             MR. TREEM:  Probation's appropriate, Your Honor,

24   because of Miss Taylor's health considerations.  They are

25   detailed in the presentence report.  We provided documentation

1    to the probation officer.  It is significant.  It's not one,

2    any one thing in particular that outweighs any other, but it's

3    this galaxy of conditions, if you will, that we are concerned

4    that a prison term of any length, and one even as short as five

5    months, actually kind of puts Miss Taylor in, kind of a

6    potential black hole, if you will.

7          It's short -- any incarceration's going to increase

8    her stress level, which has already reached the point where

9    even the probation officer has recognized that counseling,

10   mental health counseling, is going to be part of any

11   probationary or any supervisory release program, and Miss

12   Taylor herself recognizes that the stress and strain that she

13   has been under, that she needs help, and she acknowledges that.

14         And I think would welcome whatever program can be

15   established would provide that.

16         The problem is, it's not going to happen any time --

17   a therapeutic program is not going to be able to instituted in

18   the five months that kind of split sentence that the guidelines

19   seem to talk about.  The guidelines don't deal with this issue,

20   and that's one reason, perhaps, why the guidelines ought to be

21   not followed in this case.

22         But -- and I say this more from experience than from

23   literature, the Bureau of Prisons, if nothing else, especially

24   with health considerations, move slowly, because they have --

25   and the Court I'm sure is aware of this, they have their own

1    protocol.  They have their own formulary of drugs, and it takes

2    time to coordinate the treatment course that Miss Taylor might

3    have been under on presentence release on her own with whatever

4    might be available at the facility to which she is designated.

5            And my fear is, and I think it's a legitimate fear,

6    that just the passage of time, she won't be getting the

7    treatment, she will be in jail, which will heighten her stress,

8    which will trigger potentially additional consequences, none of

9    which should befall her.

10           Everything else aside, that should not happen.  And

11   so I think her health is in fact a very significant factor to

12   be considered here and another reason why probation is

13   appropriate.

14           Probation's appropriate because of the nature of the

15   offense.  We touched on this just a moment ago, but it is a

16   Class D felony.  And it is -- not to diminish its importance,

17   because it is an important statute, and should be followed, and

18   Congress certainly has decided that it must be followed, it is

19   a crime of omission.

20           And so, in response to Your Honor's question a moment

21   ago how do we make sure that it doesn't happen again, well, by

22   it not happening again, I mean, there's no -- for instance,

23   there's no order that you can sign other than follow the law

24   that can deter this.

25           I suspect, although I don't know, I suspect that Miss

1    Taylor's name is on a watch list now.  ICE has it, Homeland

2    Security has it.  If she's traveling overseas, the government's

3    going to know about it.  If she's the traveling anywhere, the

4    government -- by air, certainly, the government's going to know

5    about it.

6         And so there's nothing that I can -- I don't think

7    there's anything that you can impose on her, through a

8    probation or even supervisory release status or anything else

9    that's going to prevent it from happening if she wanted to do

10   it.

11        THE COURT:  What if I took her passport and

12   prohibited her from traveling out of the country for the

13   probationary period of time?

14        MR. TREEM:  Well, you certainly do that, Your Honor.

15   For sure, you could.

16        THE COURT:  That would prevent her from -- that would

17   put constraints upon her from trying to bring out,

18   intentionally trying to bring out money again.

19        MR. TREEM:  Well, it works, Your Honor, but I harken

20   back to the one example that we have of her travel out of the

21   country during the pendency of this case.

22        You'll remember Miss Taylor had requested return of

23   her passport so she could travel to Jamaica to visit her

24   mother, who's not well.

25        THE COURT:  Because she thought she may not see her

1    again.

2           MR. TREEM:  That's right.  And that certainly remains

3    the case.  And would certainly remain the case if she were in

4    jail, if something were to happen, she would not have that

5    opportunity.

6           And Miss Taylor demonstrated an ability to abide by

7    the Court's orders.  She changed her itinerary so she would not

8    travel to Florida to meet her friend.  That was done.  She got

9    her passport.  She returned her passport.

10          Certainly with the opportunity to apply for return of

11   the passport, the specific travel perhaps to Jamaica to visit

12   her mother, I don't have -- we can't object to the Court's

13   comment about taking her passport for the duration of the term

14   of supervision, if you will.  And we certainly would agree with

15   that.

16          But we would certainly ask for the opportunity to

17   apply on either a case by case or as needed basis for the

18   return of the passport, for, again, with the conditions that

19   occurred before, which Miss Taylor provided some details of the

20   travel, how long she'll be staying, when she'll be coming back,

21   that is -- that's certainly appropriate, Your Honor, under

22   these circumstances.

23          THE COURT:  Uh-huh.

24          MR. TREEM:  But I'd just like to point out that with

25   respect to the guidelines, this is a crime regardless of the

1    amount that's taken out of the country if it exceeds $10,000.

2    It's the same crime if it's $10,001 as it is for $102,000.

3           And so the point is that, to the extent that the case

4    -- or the Court or the government wishes to prosecute the case,

5    the amount of the money that's driving the guidelines really

6    has very little to do with the crime here because the crime is

7    I didn't fill out the form.

8           And as I said, it doesn't matter what the amount is.

9    And the seriousness of the crime really shouldn't depend on the

10   amount of the money taken out.

11          And so what I would suggest to Your Honor is that the

12   guidelines, to the extent they establish these very arbitrary

13   divisions really, from an empirical basis, don't make any

14   sense.

15          I mean, what's the difference between $69,000 and

16   $71,000?  It's $2,000, but it's two levels.  And what's the

17   difference between $71,000, I mean, if the -- you know, if the

18   amount of money taken out makes a difference, really, $71,000

19   is the same as $119,000?

20          And so, you know, we talk about the guidelines as

21   establishing this 10 to 16 month level, but it really makes no

22   sense.  It's kind of capricious.  It's arbitrary.  It doesn't

23   correspond to the crime being committed here, which is the

24   failure to file the form.

25          THE COURT:  I got you.  You know, I certainly

1    appreciate that argument.  Why don't you talk to me a little

2    bit about a fine.  Why shouldn't I impose a fine?  Whose money

3    was it?

4              MR. TREEM:  Well --

5              THE COURT:  I mean, she's got $102,000, so where's

6    the source of that?  Why should I not impose a 50 or 60 or a

7    hundred thousand dollars fine?

8              MR. TREEM:  Because she doesn't have 50, 60 or --

9              THE COURT:  Where'd she get the money?

10             MR. TREEM:  I think that's a question I'm not

11   prepared to answer.  It's a question for another day, quite

12   frankly.

13             THE COURT:  I need to know, because I need to know

14   whether or not if she's got resources that she receives a

15   hundred thousand dollars from somewhere over a hundred thousand

16   dollars in cash, then why shouldn't, I -- if I don't know the

17   source of that income, why should I take her word for it that

18   she doesn't have any money?

19             MR. TREEM:  Well, okay, Your Honor.  I think the

20   short answer to that is nothing that we have produced to the

21   government, to the presentence officer during the period of

22   which the investigation, presentence investigation was going

23   on, reflects that she has any money at all to pay a fine.

24             In fact, it reflects that Miss Taylor has been in

25   bankruptcy on prior occasions.

1                    So there is nothing in the record that we are aware
2      of that establishes.
3                    THE COURT:  Other than?
4                    MR. TREEM:  A source.
5                    THE COURT:  Other than -- I didn't mean to cut you
6      off, Mr. Treem, but you know what I mean.  Neither one of us
7      takes offense to it.  But other than the fact that she had
8      $102,000, I mean.
9                    MR. TREEM:  Let's assume hypothetically, Your Honor.
10                   THE COURT:  She got it from somebody else.
11                   MR. TREEM:  She got it from somebody else.  Let's
12     just assume that for purposes of our discussion.
13                   THE COURT:  But it was a gift.
14                   MR. TREEM:  I don't know what it was, Your Honor.
15     But the point is, two points.  One is, you know, some of the
16     releases that we sign allow the government to go get whatever
17     information it feels it needs, and we produced financial
18     information to the government, including bank account
19     information that Miss Taylor has, and the government is
20     certainly free to investigate all of that.
21                   And I guarantee you, if the government thought or the
22     pretrial, probation officer thought she had sources of income
23     that she could tap that either through real estate or financial
24     sources, which she had an ownership interest that she could
25     raise money to pay a fine, that would be in the report.  It's

1    not.

2            So there is no basis, factual basis, I would submit,

3    in which the Court can impose a fine under these circumstances.

4    The record just doesn't reflect it.

5            THE COURT:  I just want to make sure that during the

6    course of my examination, you make an adequate record and the

7    Court makes an adequate record regarding inability to pay a

8    fine.

9            MR. TREEM:  I appreciate that, Your Honor.  And I

10   think that's demonstrated in the record, in the presentence

11   report, in the documents that we've provided to the probation

12   officer, and I don't think there's any -- any factual basis to

13   --

14           THE COURT:  She does have equity in her home, though?

15           MR. TREEM:  There is some equity in her home, yes,

16   Your Honor but it's not a lot.  And given the kind of tenuous

17   nature of Miss Taylor's continuing ability to practice as a

18   nurse, I will hope the Court does not impose a monetary penalty

19   that's going to create more problems for her, because quite

20   frankly, she could potential lose that house if her license is

21   revoked or suspended and she's unable to work.

22           And that kind of brings me to the other point about

23   Miss Taylor having been punished enough.  The collateral

24   consequences of the charge and now conviction are potentially

25   daunting.  She could lose her house.  She could lose her

1      license to practice.

2              And on that note, just one aside.  Miss Taylor, on

3      her own, she wasn't legally required to do this, but on her

4      own, reported the conviction, once Your Honor found her guilty

5      of the crime after the plea, reported that conviction to the

6      Maryland Nursing Board.  Her license is not up for renewal.

7      Under the terms of the license, you don't have to report

8      convictions or other indiscretions, if you will, until your

9      license is up for renewal.  But she proactively put the board

10     on notice that she has been convicted.

11             It's pending.  We don't know, what, if anything's

12     going to happen.

13             Additionally, she has looked for work in the District

14     of Columbia and has an opportunity to work for a nursing home

15     in the District of Columbia as a nurse.

16             She has applied for a nursing license in the District

17     of Columbia and has told the Nursing Board of this conviction.

18     They are reviewing it, as far as I know, and Miss Taylor will

19     tell you more about that when she speaks to Your Honor.

20             But that kind of gets back to what the point I was

21     making earlier about who this woman really is and her

22     determination to do whatever she can to maintain her job and

23     her income and work in the field, in which she is so

24     passionate, but she's in danger of losing that.

25             She's in danger of losing her house.  She's in danger

1    of being unable to complete the education that she's trying to

2    get, to get a bachelors, if you will.

3            She's enrolled in an online Community College.  Her

4    opportunity to get student loans will be significantly

5    diminished if not extinguished by this conviction.

6            She's determined to continue on, and I suspect that

7    if the Court gives her that opportunity on probation, that she

8    will find a way do that.

9            Obviously, if she's in jail, she won't be able to do

10   that.

11           And I think, Your Honor, those kind of consequences

12   and particularly the conviction, obviously, are going to

13   continue with her for the rest of her life.

14           THE COURT:  I mean, this is a woman who was a healer,

15   and then just for whatever reason, whether or not it is being

16   manipulated by others or for some purpose, has really almost

17   thrown it all away.

18           MR. TREEM:  Exactly, Your Honor.  The letters I think

19   touch on that, the letters that you have touch on that.  The

20   effect this has had on her, and the why question, will just

21   remain a puzzlement.  It is something that she will have to

22   live with.

23           THE COURT:  She knows.

24           MR. TREEM:  She does, Your Honor.  She's going to

25   have to live with that.  In fact, she has been living with it.

1                    THE COURT:  Right.

2                    MR. TREEM:  You know, the point is that jailing her

3     now, I mean, she spent two years trying to continue to live

4     with this hanging over her head.

5                    And she is moving on.  And she's got a future.

6                    One of the objects of probation is not simply to

7     punish, but it is to put people in a position to get back into

8     society once they come out of jail.  Miss Taylor's kind of done

9     all of that already.

10                   And so recognizing that probation and supervision

11    always has some form of punitive nature to it, we're suggesting

12    that three years is enough, because she doesn't need the

13    training, the vocational training, the education.

14                   She doesn't need the addict counseling that is often

15    required for others on probationary sentences, or either under

16    supervised release.  She needs treatment.  Mental health

17    treatment.

18                   The government has -- excuse me, probation has

19    suggested two years.

20                   If you take that two years and you add it to the ten

21    months of supervision in jail that the guidelines seem to call

22    for, then you're at 34 months.  And we've rounded up to 36.

23                   But there is some rationale to our number.  I'd

24    suggest there's really no rationale to the government's number,

25    other than they want the maximum.

1          And I don't think that adds anything, it just becomes

2     another burden for probation to continue Miss Taylor on a

3     program where I submit she's not going to need it.

4          She has proven to this Court, with her conduct on

5     pretrial release and in the travel to Jamaica that the Court I

6     think legitimately was somewhat skeptical about, that you know

7     if you give her an order, she'll be able to follow it.

8          And I think that's our guide post.  That's our

9     example.  I think there's --

10         THE COURT:  Have you been to Jamaica?  I know it's

11    probably very easy to get lost up in the mountains or in

12    Kingston, or Mobay or Ochos Rios, and you can -- especially

13    you've got family there, and you're free there, it's easy.  You

14    can easily get lost.

15         MR. TREEM:  Yes, indeed, that's correct.

16         THE COURT:  Not a bad place to get lot, either.

17         MR. TREEM:  You're absolutely right about that, Your

18    Honor.  But it is easy, and it could be done, and you know Miss

19    Taylor hasn't done that.

20         And there's no reason to expect that she will.

21         Remember, I mean, she came here 30 years ago.  She

22    chose to come here.  She chose to become a citizen.  She chose

23    to establish a career.  She chose to go to school.  She chose

24    to raise her kids here, which she's done.

25         Her life is here.  Her job is here her passion's

1   here.  Her community's here.  There is really no reason under

2   all these circumstances for her to receive anything other than

3   probation, Your Honor.

4        I think I'm done.

5        THE COURT:  Okay.  Do you wish for me to hear from

6   any other people that have traveled here for this?

7        MR. TREEM:  I think -- I don't know.  Would any of

8   you like to address His Honor?  Okay.

9        THE COURT:  All right.  Come on up, ma'am, stand up.

10       MR. TREEM:  Would you like her are to come forward?

11       THE COURT:  Inside the well.  I find it's appropriate

12   to allow people who have traveled and taken the time to come

13   for the sentencing if the Judge wanted to hear from them.

14       MR. TREEM:  I certainly do appreciate that, Your

15   Honor.

16       THE COURT:  Sure.

17       MR. TREEM:  Thank you for in opportunity.

18       THE COURT:  Welcome.

19       MR. TREEM:  Just identify yourself.

20       THE COURT:  Please, ma'am, could you state your name

21   for the record for me?

22       MS. HOLDER:  Good morning, Judge Russell.  My name is

23   Patricia Holder, the sister of Miss Taylor.  I'm writing you on

24   behalf of my sister Yvonne Taylor.  She is scheduled for

25   sentencing hearing before you on June 21st, 2013.

1          I have been employed as a correctional officer for
2    over 22 years.  My sister Yvonne Taylor is very hard-working
3    and individual and has arrived here in America in 1982.  My
4    have sister has always worked.  Most times, she's working two
5    jobs.  My sister went to nursing school to become an LPN and
6    has continued to go to school so she can --
7          THE COURT:  Miss holder, let me stop you.  I don't
8    mean to interrupt you.  I've already read your letter.  I've
9    read it.  I mean, and I have it in front of me now.  But if
10   there's anything else.  You don't need to read from the letter.
11   Why don't you tell me what you'd like to say.
12         THE WITNESS:  Judge, if you could find in your heart
13   to sentence my sister to probation and not jail time, I think
14   she's learned her lesson, and I'll monitor her and make sure
15   she won't make the same mistake again, Judge.
16         THE COURT:  Okay.  Thank you.
17         Mr. Treem, would your client like to allocute?
18         MR. TREEM:  Yes, Your Honor.  In fact, two requests.
19   One is that Miss Taylor has written something out that she'd
20   like to read, rather than kind of stumbling through it.  And
21   it's a letter that she would like to read to Your Honor, and I
22   would ask that it be filed subsequent to her reading it, number
23   one.
24         And number two, could she sit at the table to --
25         THE COURT:  Yes.

1          MR. TREEM:  Thank you, Your Honor.

2          THE DEFENDANT:  Your Honor, I want to let you know

3     the person that I really am.  I first want to say my action on

4     May 27, 2013 was a grave mistake, one of which I will never

5     forget.

6          This mistake has forever changed my life.  And I'm a

7     baptized and a church member.  And I know right from wrong only

8     I didn't exhibit my sense of the strong moral honest law

9     abiding conviction which has been instilled in me since my

10    childhood.

11         Judge Russell, I'm one of the most hard-working

12    persons around.  I'm always willing to work to achieve my

13    goals.

14         I purchased my home as a single parent five years

15    after I'd been in America.  As a nurse, I made excellent

16    income, and I've always worked two jobs.

17         I'm a kind, caring, and giving person.  I have

18    volunteered at shelter for the homeless on most major holidays.

19    I also voluntary at a nursing home.

20         I'm very family oriented.  And I am one of the bonds

21    of my family.  Everyone comes to me for advice, co-workers and

22    family.

23         I encourage all my grandchildren, nieces and nephews

24    to make school their biggest priority.

25         I also volunteer in a shelter for troubled teens

1    whenever I go to Jamaica.

2            I'm also responsible for the care of my ailing mother

3    and aunt.

4            Judge Russell, I can assure you, I have regretted my

5    action, and I have learned several harsh lessons since.  My

6    nursing license is in jeopardy due to this conviction.

7            I love nursing.  And I love to work in the nursing

8    home with the elderly.  And this is something I passionately

9    love doing.

10           I bring used clothing items from friends and family

11   to the elderly who have no family members.  I have anyone who

12   needs help to complete forms to providing words of wisdom and

13   support in difficult situations.

14           I recently helped a retired co-worker to apply for

15   his Medicare and Social Security benefits.  He cried and told

16   me he's been trying to get one of his children to help him.  He

17   offered me money, which I refused and told him I was happy to

18   help him.

19           Judge, I actually believe my suffering as a result of

20   my action has been very extensive.  I have lost credibility in

21   the public eye, and this I believe is not the person that I

22   truly am.

23           I feel like I let my family down, especially my

24   mother.  As a child, we were -- as a child, if we brought home

25   an item as small as an eraser that did not belong to us, as

1    children, we were punished, and we would have to bring back the

2    eraser the same day to the person and apologize for our action.

3         I have withheld this conviction from all of my

4    grandchildren, as I constantly tell them about being honest,

5    decent human beings.

6         My husband has told everyone in our community about

7    my conviction.  Judge Russell, I will eventually have to move

8    out of my community as none of my neighbors speaks to me.  I

9    have lived in this community for over 20 years.

10        I recently got a job at the a home in Washington,

11   D.C. and has been awaiting my nursing license for six weeks as

12   their -- it's on the board review due to my felony conviction.

13   There's no guarantee that I will get this license.

14        Judge Russell, I plead with you to give me probation.

15   I will be forever grateful for this as it will allow me to

16   continue the two classes I'm currently enrolled in at the

17   Community College online.  Both classes end August 9.

18        If I do not get my -- if I get my license, I will be

19   able to start working with the elderly again.

20        Your Honor, thank you for considering my request.

21   Thank you very much.

22        THE COURT:  Thank you.

23        MR. TREEM:  Your Honor, just for the record, I'd like

24   to submit a copy of the letter that Miss Taylor just read, and

25   also --

1          THE COURT:  Yes.

2          MR. TREEM:  There is one other document, I think

3    there was a reference in the presentence report that the

4    probation officer was unable to verify payments with the Pratt

5    Community College online, some evidence of the payment office

6    of payments that Miss Taylor has made, so I'd just like to

7    submit that as well.

8          THE COURT:  Do you want to submit that to Miss

9    Martin?

10         MR. TREEM:  I can do that, Your Honor.

11         THE COURT:  Why don't you submit it to Miss Martin.

12   And to the extent -- I will just ask Miss Martin to the extent

13   that it does verify, at least note it in your report.

14         MS. MARTIN:  Certainly.

15         THE COURT:  And you can mark that as defense 1 to the

16   sentencing memorandum, and I will go ahead and accept it.

17         THE CLERK:  You can file it electronically.

18         MR. TREEM:  That's fine.  Okay.

19         THE COURT:  That's fine.  Thank you very.

20         All right.  Applying Section 3553(a) factors in this

21   case, looking at the history and characteristics of this

22   defendant, this defendant presents as a well-spoken,

23   well-educated, 55-year old woman, who has had no contact with

24   the criminal justice system prior to this incident.

25         She presents as being in poor health.  But

1    nevertheless, well-spoken.

2           Miss Taylor was a healer, an educator, and has as

3    indicated by her well thought-out remarks, was passionate about

4    what she did.  However, she made a terrible mistake.

5           The nature and circumstances of the offense are

6    serious.  This country certainly does have an interest in

7    safeguarding its currency.  There is no evidence that was

8    presented to the Court, at least from Miss Taylor, as to the

9    source of proceeds, but it certainly was an extraordinarily

10   large amount of money, which she knowingly transported and did

11   not report.

12          This offense has now cost her significantly.  It will

13   cost her her license to do what she wants to do.  It cost

14   potential people who she will help because she can't do it

15   anymore, and apparently she was very good at it.

16          I do, however, believe that her words show extreme

17   remorse.  I think she regrets.  I think Miss Taylor, you regret

18   what you did.

19          It was silly.  It was reckless.  It was

20   irresponsible.  And unfortunately, it's cost you a great deal.

21   It's cost you your health.  It's cost your familial

22   relationships, although the bonds with your family, especially

23   your sister back there, are broken.  She's hurt.

24          Your other family members are hurt.  You may not see

25   them here because your back is to them, but they're hurt.

1    They're hurting.

2         And they're mortified to have to be here right now.

3    I'm certain your sister can't imagine that she would be sitting

4    in a Federal Court watching you get sentenced.

5         But nevertheless, we're here.  I do believe that you

6    will be deterred by your conduct regardless of the sentence

7    that I impose.

8         I don't believe that the public has a need to be

9    protected from you, so to speak, and I do believe I want to

10   impose a sentence that I would hope to get the treatment, the

11   psychological treatment and mental health treatment that is

12   recommended that you need.

13        The advisory guidelines are 10 to 16 months in prison

14   in this case.  There is a recommendation of a split sentence,

15   five months incarceration, five months of home detention in

16   this matter.

17        The sentence is sufficient but not greater than

18   necessary to comply with the purposes of 18 United States Code,

19   Section 3553(a) is in this Court's judgment is five years

20   probation.

21        I want, as a special condition that's going to be,

22   I'm going to impose mental health treatment during the course

23   of the probationary period of time as needed and as indicated.

24   You're going to surrender your passport to the probation

25   office.

1          You are restricted to travel only in Maryland,

2    Virginia, and Washington D.C., as excepted with permission of

3    probation.  You're not to travel outside of the country without

4    a specific court order to do so.  Which, I will tell you, Miss

5    Taylor, will not summarily be granted.

6          Which will not summarily be granted.

7          I understand the financial hardship that you are

8    currently under, but I also understand you got tremendous

9    potential to rebound as well.  You're not destitute.  You're

10   not homeless.  I am going to impose a fine of $3,000.  That is

11   at the low of the guideline range, and I think based upon your

12   assets and resources and your current ability to pay, I think

13   that you can.

14         It will be paid over the course of the probationary

15   period of time.

16         The restitution is not an issue here, but I am going

17   to order that it was $102,000, or precisely, approximately

18   $102,000, Mr. Cunningham?  Is that correct, Mr. Cunningham?

19         MR. CUNNINGHAM:  Yes, Your Honor, if you'll bear with

20   me one second.

21         THE COURT:  I believe it's outlined in the

22   presentence report, but the amount of money that was recovered

23   from Miss Taylor at BWI Airport will be forfeited.  So whatever

24   that precise amount is.

25         MR. TREEM:  Actually, Your Honor, just for the

1    record, it was recovered in Atlanta.

2              THE COURT:  Atlanta.  You're absolutely right, thank

3    you, Mr. Treem.

4              What was the precise amount, Mr. Cunningham, do you

5    have it handy?

6              MR. CUNNINGHAM:  I was looking at the consent order

7    of forfeiture, I thought it was specified in there, but you're

8    absolutely right that it's $102,195, Your Honor.

9              THE COURT:  Will be forfeited.  I am going to impose

10   a special assessment of $100 in this case.

11             Although the sentence does not fall within the

12   guideline range, I do believe nonetheless it's appropriate in

13   light of the Court its findings under 3553(a) and that

14   statute's purposes.

15             There are no counts to be dismissed in this case.

16             Miss Taylor, you have 14 days to file notice of

17   appeal in this matter.

18             Yes, Mr. Cunningham?

19             MR. CUNNINGHAM:  Your Honor, I stand, and I

20   apologize, because I come without an oral -- excuse me, without

21   a written motion to dismiss, but there is -- there was the

22   government made the plea was guilty and if it was accepted by

23   the Court the sentence was imposed, we would move to dismiss

24   the indictment, which was returned, and that was in case GLR

25   11-0310.  There was a one-count indictment for violation of 31

```
 1    USC 5332.

 2              THE COURT:  Okay.

 3              MR. CUNNINGHAM:  Which I am in fact moving at this

 4    time to dismiss.

 5              THE COURT:  All right.  I will go ahead and grant

 6    that.  Mr. Cunningham, do you think you can make a paper filing

 7    this morning?

 8              MR. CUNNINGHAM:  Yes, Your Honor.

 9              THE COURT:  Before the end of the day?

10              MR. CUNNINGHAM:  Yes.

11              THE COURT:  But I am going to go ahead and grant that

12    oral motion.

13              She has 14 days.

14              Miss Taylor, you've got 14 days to file an appeal if

15    you feel your guilty plea was somehow unlawful or involuntary

16    or if there's some other fundamental defect in the proceeding

17    that was not waived by your guilty plea.

18              You also may appeal your sentence if you believe your

19    sentence is unlawful in this case.  But I will go ahead and

20    prepare a judgment order in this case, judgment and commitment

21    order.  Statement of reasons are also going to be prepared on

22    these documents, as well as any other appropriate records

23    related to the sentencing will be filed with the United States

24    Sentencing Commission and the United States Bureau of Prisons

25    in this case.
```

1            Mr. Treem, is there anything else?

2            MR. TREEM:  Actually there is, Your Honor.  We would

3    ask that -- let me preface this by saying as the Court will

4    recall, this was a conditional plea.  Miss Taylor intends to

5    file notice of appeal to kind of tee up the suppression issue

6    that is going to be appealed.

7            And so we would move under rule 38(d) of the Federal

8    Rules of Criminal Procedure -- oh.  (c) and (d), I'm sorry,

9    that the execution of the sentence that is the term of

10   probation and the fine be stayed pending the appeal.

11           It is discretionary with the Court.  The Court may do

12   that, as I understand the rule.  And if the Court grants the

13   motion, then the Court, of course, can impose conditions of

14   release pending the appeal.

15           But we will --

16           THE COURT:  Is that something -- if that's what you

17   want to do, because it's going to -- if you're not successful

18   on appeal and I impose conditions similar to the probationary

19   conditions, then you add to the probation.

20           MR. TREEM:  Well, let me do this, Your Honor --

21           THE COURT:  I'm not --

22           MR. TREEM:  I hear you.

23           THE COURT:  Your client's not going to prison.

24           MR. TREEM:  I understand.  I understand.  So let me

25   do it this way.  We may file a motion under Rule 38, and if we

1    do, we will file it today in writing.

2                    THE COURT:  Okay.

3                    MR. TREEM:  And explain what we're looking for and

4    why we want it.

5                    THE COURT:  Because, well, and you may file a motion,

6    but the Court may be inclined to impose similar conditions

7    regarding travel restrictions and work restrictions.

8                    MR. TREEM:  I understand that, Your Honor.  That's

9    what we want to discuss with Miss Taylor.

10                   THE COURT:  Right.  Okay.

11                   MR. TREEM:  To see whether it's makes any difference

12   at all.

13                   MR. CUNNINGHAM:  It almost seems irrespective of what

14   might be under Rule 38, there are existing conditions that are

15   imposed that would continue in any event.

16                   THE COURT:  Right.  And then we end up six months

17   from now having -- if the conviction is affirmed, having five

18   and a half years of almost probationary condition.

19                   Okay.  If you decide to file it, you go ahead and

20   file it.  We made tend to it with a hearing or without.

21                   MR. TREEM:  I think --

22                   THE CLERK: I'm sorry, Your Honor.  Are you scheduling

23   any payments for the fine?

24                   THE COURT:  Right.  Here's what I'll do.  As far as

25   the fine is concerned, the fine will be set out over the period

1       of the probation.  So, in other words, it will be equally

2       divided in payments over the period of probation.

3                 MR. TREEM:  Okay.

4                 THE COURT:  Monthly payments over the period of

5       probation.  So $3,000 over 60 months to be paid monthly.

6                 MR. TREEM:  Sounds like 200 a month or something.  I

7       wasn't a math major.  I became a lawyer.

8                 THE COURT:  Neither was I, but my expectation is the

9       fine would not be paid in one lump sum within 30 days.  The

10      fine is to be paid in equal monthly payments over the course of

11      the probation, the five years probation.

12                MR. TREEM:  That's fine, thank you.

13                THE COURT:  Okay.  Is there anything else, Mr. Treem?

14                MR. TREEM:  I don't think so, Your Honor.  Thank you.

15                THE COURT:  Mr. Cunningham?

16                MR. CUNNINGHAM:  No, Your Honor.

17                THE COURT:  Okay.  Thank you very much.

18                Miss Taylor, Mr. Hamm, have a safe trip back home.

19                     (Proceedings adjourned)

20

21

22

23

24

25

1          I, Jacqueline Sovich, RPR, CM, do hereby certify
that the foregoing is a correct transcript from the
2   stenographic record of proceedings in the above-entitled
matter.

3

4   _____

5   Jacqueline Sovich                      DATE
Official Court Reporter
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25